**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAIEM PHARMACY CORP., PROSPECT PHARMACY, LLC, MOHAMMED A. NAIEM, MOINA NAIEM and NASER OBEIDALLAH<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN EASTERN CO., INC.,<br><br>Defendant. | Civil Action No.: 14-3399 (JLL)<br><br><br>**OPINION** |

This matter comes before the Court by way of Defendant Walgreen Eastern Co., Inc., ("Defendant")'s motion to dismiss (ECF No. 20) Plaintiffs Naiem Pharmacy Corp., Prospect Pharmacy, LLC, Mohammed A. Naiem, Moina Naiem, and Naser Obeidallah (Collectively "Plaintiffs")'s Amended Complaint ("AC")(ECF No. 16). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. The Court has considered the submissions and arguments of both parties. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiff Prospect Pharmacy, LLC, was the owner and operator of a retail pharmacy located at 214 Haledon Avenue, Prospect Park, New Jersey. (AC at ¶ 3). Plaintiffs Naiem and Naser Obeidallah, are the owners of Prospect Park Pharmacy LLC. (*Id.* at ¶ 4). Plaintiff Naiem

---

[1] The following facts are taken as true solely for the purpose of this motion.

Pharmacy Corp., a New Jersey corporation, was the owner and operator of a retail pharmacy located at 447 Belmont Avenue, Haledon, New Jersey. (*Id.* at ¶ 1). Plaintiffs Mohammed A. and Moina Naiem, are the owners of all of the outstanding capital stock of Naiem Pharmacy Corp. and are its principal officers. (*Id.*, ¶ 2). Defendant Walgreens is a publicly held New York corporation which owns and operates retail pharmacies under the Walgreens Brand throughout the United States. (*Id.* at ¶ 5).

On October 5, 2012, in anticipation of its proposed opening of a new Walgreens (the "New Walgreens Store"), Plaintiffs and Defendant simultaneously entered into separate Asset Purchase Agreements for the purchase of both the Naiem Pharmacy and the Prospect Pharmacy. (*Id.* at ¶ 6). Pursuant to the Agreements both pharmacies would be closed and consolidated into the New Walgreens Store. (*Id.*) The Asset Purchase Agreements ("APAs") provided for the sale of certain business assets, including, prescriptions, prescription files, records, customer lists and patient profiles in addition to both pharmacies' inventory of prescription pharmaceutical products. (*Id.* at ¶ 7). Pursuant to the Naiem APA, Walgreens agreed to pay Naiem Pharmacy, Mohammed and Moina up to $880,112 at closing for Naiem Pharmacy's Records, and up to $300,000 as a "Prescription Earnout" calculated on the volume of prescription business generated from Naiem Pharmacy's customers at any Walgreens store over the 12 month period following closing. (*Id.* at ¶ 8). Pursuant to the Prospect APA, Walgreens agreed to pay Prospect, Mohammed and Obeidallah up to $759,000 at closing for Prospect's Records, and up to $125,000 as a Prescription Earnout calculated in the same manner as under the Naiem APA. (*Id.* at ¶ 9). Plaintiffs allege that approximately seventy to eighty (70-80%) percent of the Naiem Pharmacy's prescription volume (which had averaged approximately 150 a day before the closing) was Medicaid supported. (*Id.* at ¶ 10). Moreover, approximately half of the Prospect

2

Pharmacy's prescription volume (which had averaged approximately 120 a day before the closing) was Medicaid supported. (*Id.* at ¶ 11).

Plaintiffs contend that after the closing was concluded, Defendant advised Plaintiffs that it had not yet received its Medicaid provider number for the New Walgreens Store. (*Id.* at ¶ 12). Prior to the closing, Defendant had never even given any indication that it did not have a Medicaid authorization, that it had not applied for a Medicaid authorization and/or that there might be any delay beyond closing for Defendant to receive its Medicaid authorization number. (*Id.* at ¶ 13). Thereafter, when Plaintiffs asked Defendant's Acquisition Manager and District Supervisor why Defendant had not told Plaintiffs before the closing that Defendant had not yet received a Medicaid provider number for the New Walgreens Store, the answer given was because Defendant did not know how many more months it might take to get the Medicaid authorization and Defendant needed to complete the closing quickly. (*Id.* at ¶ 23). Plaintiffs assert that Defendant failed to obtain a Medicaid provider number for the New Walgreens Store until approximately six (6) months after the closing date. (*Id.* at ¶ 24).

Defendant instructed its employees at the New Walgreens Store to inform its customers who wanted to pay using Medicaid that the store was not licensed to fill their prescriptions, and that if they left their prescriptions at the store, Defendant would deliver them to another one of its stores, and that the customers would have to come back in a day or two to pick up their prescriptions. (*Id.* at ¶ 25). This resulted in confusion amongst many of Plaintiffs' former customers, who ultimately chose to fill their prescriptions at other pharmacies where they could be filled immediately. (*Id.* at ¶¶ 26-27). For example, Plaintiffs allege that a customer of Naiem Pharmacy, which operated three psychiatric rehabilitation facilities, averaged a submission of

3

approximately 200 Medicaid prescriptions a month, stopped filling its prescriptions because of the inability of the New Walgreens Store to fill its Medicaid prescriptions. (*Id.* at ¶ 28).

Plaintiffs contend that as a result of these actions, a large percentage of both pharmacies' customers could not fill their prescriptions at the New Walgreen Store during the first half of the year during which Plaintiffs' average daily prescriptions were be counted to determine amount of the earnouts. (*Id.* at ¶ 29). Notwithstanding Defendant's failure to receive its Medicaid provider authorization, Plaintiffs believe that the number of prescriptions filled for their former customers at the New Walgreens Store during the earnout period was nonetheless greater than, or equal to, the minimum number of prescriptions which were required to be filled in order for Plaintiffs to be contractually entitled to their maximum prescriptions earnouts. (*Id.* at ¶ 30). Plaintiffs learned that the prescriptions filled at the New Walgreens Store alone averaged approximately 225-300 a day, starting as soon as the closing occurred, and they are aware that the large majority of those prescriptions were filled by the customers of their former pharmacies. (*Id.* at ¶ 32).

At the conclusion of the one year earnout period, Defendant advised Naiem Pharmacy that the average daily number of its customer prescriptions from the former customers had substantially declined, resulting in only $50,000 of the $300,000 earnout amount was payable under the terms of the Asset Purchase Agreement. (*Id.* at ¶ 36). Similarly, at the conclusion of the one year earnout period, Defendant advised Prospect Pharmacy that the average daily number of its customer prescriptions from its former customers had substantially declined and that no portion of the $125,000 earnout amount was payable under the terms of the Asset Purchase Agreement. (*Id.* at ¶ 38).

Defendant offered no documentation to support its calculations as to the average number of prescriptions filled to either pharmacies' former customers, both initially, and following

4

written demand from Plaintiffs for such documentation. (*Id.* at ¶ 41). On January 6, 2014, Kristine E. Iida, a senior attorney of Corporate and Acquisitions Law at Walgreen Co. advised Plaintiffs via email that "We do not have any additional detailed information that we can provide you regarding this calculation" (*Id.* at ¶ 42).

On September 5, 2014, Plaintiffs filed an Amended Complaint against Defendant alleging the following causes of action: (1) Breach of Contract and (2) Fraud.[2]

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. DICUSSION

### A. Motions before the Court

#### 1. Defendant's Motion to Dismiss

Defendant contends that Plaintiffs' claims should be dismissed on the following grounds:

---

[2] The Court held in its previous Opinion that Illinois state substantive law applies to this action. (*See* ECF No. 14 at 5 FN.2).

(1) Plaintiffs' breach of contract claim should be dismissed because the APAs do not require Walgreens to pay an earnout, to apply for a Medicaid provider license within a certain period of time, to disclose to Plaintiffs whether it had obtained the license prior to closing, or to provide Plaintiffs with an accounting; (2) Plaintiffs' claim that Walgreens breached the APAs by breaching the implied duty of good faith and fair dealing should be dismissed because Plaintiffs have not pled that the APAs granted Walgreens any discretion; and (3) Plaintiffs' claim for fraud should be dismissed with prejudice because it still fails to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

### 2. Plaintiffs' Opposition

In opposition to the instant motion, Plaintiff argues: (1) The Amended Complaint contains sufficient factual allegations to state a claim upon which relief could be granted; (2) Plaintiffs have pled a sustainable cause of action for breach of contract; and (3) Plaintiffs have pled a sustainable cause of action for fraud.

### B. Breach of Contract

To state a breach of contract claim under Illinois law, Plaintiffs must establish: "(1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiffs' performance of all required contractual conditions; (5) defendants' breach of the terms of the contract; and (6) damage resulting from the breach." Hirsch v. Feuer, 299 Ill. App. 3d 1076, 1082 (1998).

Defendant argues that Plaintiffs' breach of contract claim must be dismissed because Plaintiff is trying to argue "on both sides of the fence." Defendant contends that Plaintiffs cannot assert that Defendant breached the APAs by failing to pay Plaintiffs the full amount due under the prescription earnout provisions after Plaintiffs visually observed the prescription threshold

6

amount being reached, while also trying to assert that because Defendant failed to obtain a Medicaid license Plaintiffs lost a large percentage of former customers using Medicaid. Defendant also asserts that the visual observations that Plaintiffs rely on to allege that the prescription threshold amount were reached do not rise to a level sufficient to defeat a motion to dismiss. Defendant also argues that Plaintiffs cannot argue that Defendant breached the APAs by failing to perform its contractual duties in good faith because Plaintiff has failed to allege the existence of a contractual provision granting the breaching party discretion, and that the party exercised that discretion in bad faith.

Plaintiffs respond the Defendant's arguments by stating that Defendant was "vested" with "contractual discretion". Plaintiffs further argue that Defendant failed to exercise that discretion in good faith when Defendant did not accept the Medicaid prescriptions nor advised Plaintiffs before the closing that it would not fill Medicaid Prescriptions until it received its provider number.

"Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted." *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 286, 154 N.E.2d 683, 690 (1958). "Generally, problems involving the duty of good faith and fair dealing arise where one party to a contract is given broad discretion in performance. The doctrine of good faith then requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 112, 618 N.E.2d 418, 424 (1993). In order to plead a breach of the covenant of good faith and fair dealing, a plaintiff must

plead existence of contractual discretion. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill.App.3d 355, 367–68, 212 Ill.Dec. 750, 657 N.E.2d 1095 (1995). Nevertheless, the good-faith duty to exercise contractual discretion reasonably does not apply where no contractual discretion exists. *Bank One, Springfield v. Roscetti*, 309 Ill.App.3d 1048, 1060, 243 Ill.Dec. 452, 723 N.E.2d 755, 764 (1999).

The Court finds that Plaintiffs have sufficiently alleged a breach of the covenant of good faith and fair dealing in order to survive Defendant's motion to dismiss. Plaintiffs allege that Defendant was aware of the "large volume" of Medicaid customer prescriptions the pharmacies serviced. (*See* AC at ¶¶ 10-11). Moreover, Plaintiffs allege that despite this knowledge, Defendant did not obtain nor take any steps to obtain a Medicaid authorization number despite entering into the APAs with Plaintiffs. (*See Id.* at ¶¶ 13-19). Furthermore, Plaintiffs allege that Defendant merely informed Plaintiffs that they had not met the threshold amount for the earnout payment, but could not provide any additional information regarding the calculation. (*See Id.* at ¶¶ 36, 42). Finally, Plaintiff alleges that if Defendant does have information regarding the earnout calculation, failure to provide this information is an abuse of its position and discretion. (*See Id.* at ¶ 43). Without providing a detailed look at the calculation, through a vehicle such as discovery, there is no way for Plaintiffs to determine whether or not they are entitled to the earnout payment beyond Defendant merely stating that Plaintiffs have not met the threshold. Defendant's position is one in which it must exercise discretion to determine whether or not the earnouts have been reached. Merely stating to Plaintiffs that they have not met the threshold requirements and providing no further evidence whether the goal was actually obtained or not, constitutes an abuse of that discretion. Therefore, the Court finds, at this stage of the litigation,

Plaintiff has sufficiently alleged a cause of action for breach of contract. Defendant's motion is denied.

### C. Fraud

To state a claim for common law fraud in Illinois, Plaintiffs must allege: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury. *Siegel v. Levy Organization Development Co., Inc.*, 153 Ill. 2d 534, 542-543 (1992). In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiffs must also allege who made the purported misrepresentations and what specific misrepresentations were made. *See, e.g., Frederico v. Home Depot*, No. 05–5579, 2006 WL 624901, at *2 (D.N.J. Mar.10, 2006).

Defendant argues that Plaintiffs' fraud claim must be dismissed because the Amended Complaint fails to specify the "who, what, when, where and how" required by Rule 9(b).

Specifically, Defendant contends that Plaintiffs fail to identify any affirmative misrepresentation by Defendant, any alleged speakers of a misrepresentation, any omission by Defendant, or that Defendant owed a duty to Plaintiffs.

Plaintiffs respond to Defendant's arguments by asserting that they have clearly stated the circumstances of the alleged fraud with sufficient particularity to place Defendant on notice of the precise misconduct with which it is charged. Specifically, Plaintiffs argue that Defendant made material representations to the Plaintiffs stating that it would take appropriate action to place itself in a position to accept Medicaid prescriptions of Plaintiffs former clients and that it would keep those records to determine the correct earnout amount. However, Plaintiffs do not identify any particular facts in which the identities of those who made the statements are alleged, where and when those statements were made, and in what capacity they were made. Despite the Courts previous instruction in its last Opinion, Plaintiffs have failed to plead the date, time and/or place of the alleged fraud by Defendant. Because the Court finds that Plaintiffs could plead fraud with specificity, the Court will grant Plaintiffs a *final* opportunity to amend insofar as they can allege the time and date of any material misrepresentations that were specifically made to Plaintiffs by Defendants, who specifically made that statement, and when it was made. Plaintiffs' fraud claim is dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion is **granted in part and denied in part**. Plaintiffs' breach of contract claim may proceed. Plaintiffs' fraud claim is dismissed without prejudice.

An appropriate Order accompanies this Opinion.

Date: December 3, 2014

Jose L. Linares
United States District Judge